UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
         Plaintiff,

v.

D-2 LIBERTY JARAMILLO,
         Defendant.
                                      /

Case No. 16-CR-20593
Hon. Gershwin A. Drain

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELASE [DKT. 193]**

The Defendant, Liberty Jaramillo ("Defendant"), has moved this Court to reduce his sentence – of which he has yet to serve a single day – from 36 months of imprisonment to nothing. This motion should be denied because there is no legal basis for requesting compassionate release from a sentence he has not yet begun to serve. The government takes no position on the alternative relief requested by the Defendant, of a deferral of his self-surrender date. This Court may well find this alternative remedy appropriate to the situation, as it allows the Defendant to remain outside of the prison system for the duration of the COVID-19 pandemic, prevents additional medical burden on federal prison resources during this time of crisis, and ensures the Defendant will nevertheless eventually repay his debt to society as originally contemplated by this Court. At any rate, the primary relief requested

1

here – to be excused entirely from serving any sentence at any time – would thwart the objectives of the criminal justice system, and this Court's own judgment in imposing this sentence on the Defendant.

**I.   Background**

The Defendant was one of the principal actors in a conspiracy designed to defraud Medicare by billing for home health services that were either never provided, were provided to ineligible patients, were medically unnecessary, and/or were provided to patients obtained fraudulently through the use of kickbacks and bribes. The Defendant was co-owner of the home health agency at the center of this fraud, called Anointed Care Services LLC ("Anointed"). He shared ownership with two other co-conspirators, and was tasked with handling Anointed's finances, as well as some of the day-to-day operations of the business. He authorized and paid kickbacks to patients and patient recruiters so as to keep a steady flow of patients coming to Anointed for home health services. The Defendant then billed Medicare for the services "provided" to the patients he and others had recruited to their practice, knowing that those bills were supported by false patient records, and were ineligible for payment. All told, Anointed billed Medicare for approximately $1,702,999.60 worth of services from November 2013 to April 2016. Medicare actually paid almost $1.6 million to Anointed.

The Defendant pleaded guilty to Conspiracy to Commit Health Care Fraud

and Wire Fraud, in violation of Chapter 18, United States Code, Section 1349. On May 3, 2018, he was sentenced to 36 months imprisonment, followed by 36 months of supervised release. The Defendant's report date has been moved several times since he was sentenced, most recently to July 23, 2020. Order [Dkt. 179] (Mar. 20, 2020). He has now filed a motion to be relieved of serving his sentence in its entirety, or, in the alternative, for extension of his self-surrender date. [Dkt. 193] (July 17, 2020). The basis for this motion is the Defendant's current poor health and the ongoing COVID-19 pandemic.

## ARGUMENT

A conversion of the Defendant's full sentence from incarceration to home confinement would thwart the original intentions and judgment of this Court in imposing that sentence, as well as the purpose of the compassionate release statute (namely, to *release* prisoners under extreme circumstances). The Government neither opposes nor consents to the alternative relief proposed by the Defendant, and defers to the Court's determination of whether a delay in reporting is appropriate here.

In order to grant compassionate release, this Court would have to find that some "extraordinary and compelling reasons" warrant it. 18 U.S.C. § 3582(c)(1)(A)(i). In support of his request, the Defendant argues several generally applicable sentencing factors that this Court already considered in imposing its

3

sentence in 2018 (an assertion that the Defendant poses no risk to the community, and that incarceration is unnecessary to serve the purposes of punishment). Def.'s Mot. for Compassionate Release ("Def.'s Mot.") at 7-8. Neither of these factors has been altered by the ongoing COVID-19 pandemic, and the Court already has determined that incarceration is nevertheless appropriate after examining them. The Defendant's more pressing argument against serving a custodial sentence is twofold: first, that he is elderly and in poor health; and second, the COVID-19 pandemic that is currently taking place across the world. Neither of these is sufficiently extraordinary or compelling to warrant negation of the Defendant's custodial sentence.

### I. Defendant's Health Does Not Present Extraordinary Circumstances.

As to the Defendant's medical conditions, these are issues of which the Court was aware at the time of sentencing. The Defendant had disclosed to Probation several health conditions prior to sentencing, including diabetes, rheumatoid arthritis, hyperthyroidism, thyroid removal, cataracts, and high cholesterol. He now is 69 years old, (he was 67 at the time of sentencing). Aside from the passage of approximately two years since sentencing, the Defendant appears, based on the representations in his brief, to be in substantially the same physical condition as he was in May of 2018. This Court nevertheless saw fit at that time to impose a custodial sentence, with no special medical accommodation ordered.

Even the Defendant does not suggest in his briefing that his medical condition has since deteriorated, let alone deteriorated so much as to render it impossible for him to be safely incarcerated – under otherwise normal circumstances. Accordingly, the Defendant's health, standing in isolation, does not constitute anything "extraordinary" enough to warrant eliminating his custodial sentence.

### II. The Current COVID-19 Pandemic Does Not Excuse Serving a Future Sentence.

As to the COVID-19 pandemic, the Defendant is right that it presents an extraordinary circumstance in a global sense. He may even be correct that, *if* he were to enter the prison system now, his health would be at greater risk in any prison environment than if he remained at home where he is currently. However, he views the Compassionate Release statute too broadly in seeking to justify a *prospective* 100% reduction in his custodial sentence as a result. In short, the Defendant is not a prisoner whose life and health are extraordinarily endangered by COVID-19 – he is in fact not a prisoner at all.[1] *See United States v. Callan*, No. 19-cr-140, 2020 WL 1969432 at *3 (D. Conn. Apr. 24, 2020) ("Mr. Callan has not yet reported to the

---

[1] That the statute is intended for those who are already incarcerated is made evident by the contours of the exhaustion requirement, which permits prisoners to move on their own behalf only first requesting relief through the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). Of course, having never yet entered the prison, this defendant is not under any warden's care, highlighting that this statute simply is not meant for him.

Bureau of Prisons, however, so the potential risk of COVID-19 at FMC Devens is not urgent or even actual for him."). The Defendant has provided statistics and information for FCI Morgantown. Def.'s Mot. 6-7. Yet, the Defendant is not currently *in* FCAI Morgantown or any prison facility, and the factors making such places dangerous will only persist for a finite period of time.

The Defendant does not suggest that COVID-19 is now a permanent fixture of incarceration conditions. Indeed, scientists around the world are racing to develop new tests, treatments, and vaccines to combat the virus.[2] Surely all parties hope and expect that, in time, this crisis will pass. In the meantime, the Attorney General, the Bureau of Prisons, and courts around the nation are confronted with the monumental task of protecting the health of those inmates already incarcerated by granting home confinement or finding other ways to safely and appropriately reduce population density in these facilities. *See Wilson v. Williams*, No. 20-cv-00794, 2020 WL 1940882 at *5 (N.D. Ohio Apr. 22, 2020) ("[T]he only truly effective remedy to stop the spread is to separate individuals – a measure that in our nation's densely populated prisons is typically impossible without the release of a portion of the population.").

---

2   *See, e.g.*, First Data for Moderna Covid-10 Vaccine Show it Spurs an Immune Response, *Stat News*, https://www.statnews.com/2020/07/14/moderna-covid19-vaccine-first-data-show-spurs-immune-response/ (July 14, 2020).

6

These efforts have resulted in the release of almost 7,000 at-risk inmates from prison facilities into home confinement. BOP: COVID-19 Update, bop.gov/coronavirus/ (July 20, 2020). It is those individuals, who already have served a portion of their sentence, and who already reside in federal prisons, who are the appropriate candidates for the relief afforded by 18 U.S.C. § 3582 or through the BOP home confinement authority at this time. The Defendant is not one such individual.

The Defendant's request, to reduce his custodial sentence from three years to zero years, on the basis of temporary conditions in a prison in which he has never set foot, should be denied. If this Court finds that the Defendant's health and age make it appropriate, the better solution would simply be to delay the Defendant's report date until the danger has passed, at which point he may fulfill the custodial sentence previously deemed appropriate by this Court. *See, e.g.*, *United States v. Nazer*, No. 18-cr-00783-2, 2020 WL 2197840 at *5 (N.D. Ill. May 6, 2020) ("By extending Nazer's surrender date, the Court can accommodate Nazer's need to be at home with his daughters as his wife responds to the increased demands of her job [due to COVID-19] without disturbing the Court's considered judgment in imposing a term of imprisonment."). The government does not oppose such alternative relief. Indeed, this alternate relief would be consistent with the crisis goals of lowering

current population density in federal prisons, without sacrificing the overarching goals of criminal sentencing.

                                       Respectfully submitted,

                                       MATTHEW SCHNEIDER
                                       U.S. Attorney

                                       /s/ Kathleen C. Cooperstein
                                       Trial Attorney
                                       United States Department of Justice
                                       1400 New York Avenue, NW
                                       Washington, DC 20530
                                       Phone: (202) 957-2958
                                       Email: Kathleen.Cooperstein@usdoj.gov

Dated: July 20, 2020

Certificate of Service

    I certify that on July 20, 2020 I electronically filed this brief for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to the following: Ronald W. Chapman, Attorney for Defendant.

<u>/s/ Kathleen C. Cooperstein</u>
Trial Attorney
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
Phone: (202) 957-2958
Email: Kathleen.Cooperstein@usdoj.gov