# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,                                      Case No.: 16-CR-20593

v.                                                         Hon. Gershwin A. Drain

**D-2. LIBERTY JARAMILLO,**

    Defendant.

---

## DEFENDANT LIBERTY JARAMILLO'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE

NOW COMES Defendant Liberty Jaramillo ("Mr. Jaramillo") by and through his undersigned counsel, and respectfully moves this Honorable Court to grant his Emergency Motion for Compassionate Release. Mr. Jaramillo respectfully requests that he be granted compassionate release for the following reasons:

1. Mr. Jaramillo is seventy (70) years old and suffers from type 2 diabetes, tachycardia, heart palpitations, high cholesterol, rheumatoid arthritis, gout attacks, and thyroid problems.

2. Mr. Jaramillo reported to the federal correctional institution USP Lewisburg in Lewisburg, PA on November 13, 2020 to serve his thirty-six (36) month sentence for health care fraud.

3. Mr. Jaramillo's report date had been continued due to the COVID-19 pandemic. The pandemic remains a threat throughout the Unites States, especially for older adults with preexisting conditions such as Mr. Jaramillo.

4. Courts have held the exhaustion of administrative remedies is not required before judicial review of a compassionate release request.

5. Extraordinary and compelling reasons exist to grant Mr. Jaramillo compassionate release.

6. The purposes of punishment can be adequately achieved through alternatives to incarceration, and without risk of danger to the community.

7. The Government has been contacted prior to filing this motion, and objects to compassionate release.

WHEREFORE, for the reasons stated herein and in the attached Brief in Support, Defendant Liberty Jaramillo, by and through his undersigned counsel, respectfully requests that this Honorable Court GRANT his instant motion for compassionate release.

3

                                                Respectfully Submitted,
                                                CHAPMAN LAW GROUP

Dated:  November 16, 2020          /s/ *Ronald W. Chapman II*
                                                Ronald W. Chapman II (P73179)
                                                *Attorney for Defendant Jaramillo*
                                                1441 West Long Lake Rd., Suite 310
                                                Troy, Michigan 48098
                                                (248) 644-6326
                                                rwchapman@chapmanlawgroup.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,　　　　　　　　　　　　Case No.: 16-CR-20593

v.　　　　　　　　　　　　　　　　　　Hon. Gershwin A. Drain

**D-2. LIBERTY JARAMILLO,**

    Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT LIBERTY JARAMILLO'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

Defendant Liberty Jaramillo respectfully submits this memorandum in support of his emergency motion requesting compassionate release.

**I. BACKGROUND**

On June 15, 2017, Mr. Jaramillo entered a plea agreement and pleaded guilty to Conspiracy to Commit Health Care Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349. On May 3, 2018, Mr. Jaramillo was sentenced to thirty-six (36) months in prison. Dkt. No. 142. Mr. Jaramillo reported to prison on November 13, 2020. Dkt. No. 197. This Court previously entered orders to extend Mr. Jaramillo's original report date of June 7, 2018 to:

    a. September 7, 2018 (Dkt. No. 145)

    b. January 7, 2019 (Dkt. No. 153)

  c. April 8, 2019 (Dkt. No. 160)

  d. August 19, 2019 (Dkt. No. 166)

  e. February 3, 2020 (Dkt. No. 171)

  f. March 23, 2020 (Dkt. No. 176)

  g. July 23, 2020 (Dkt. No. 179)

## II. GOVERNING LAW

Once imposed, a term of imprisonment cannot be modified by the court unless it determines that the defendant's administrative rights have been exhausted and extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. § 3582(c)(1)(A). The defendant or Director of the Bureau of Prisons must move the court to hear a motion of modification upon exhaustion of all administrative rights or after the lapse of thirty (30) days, whichever is first. *Id*.

Upon review of the merits of a motion for compassionate release, the court must consider the following factors: 1) whether extraordinary and compelling reasons warrant a sentence reduction, § 3582(c)(1)(A)(i); 2) whether the defendant is a danger to the community, 18 U.S.C. § 3142(g), U.S.S.G. § 1B1.13; 3) whether the reduction would take into consideration the purposes of punishment, 18 U.S.C. § 3553(a).

### III. ARGUMENT

Mr. Jaramillo has recently reported to USP Lewisburg where he will spend fourteen (14) days in quarantine before entering the general population; however, waiting to request and consider Mr. Jaramillo for compassionate release only once he has entered the general population would place him at higher risk of COVID-19 exposure and serious complications. Mr. Jaramillo respectfully requests expeditious review of this motion before his quarantine period is complete, as his vulnerable health condition, which is the result of age, chronic illness, and the COVID-19 pandemic, remains a significant threat to his wellbeing for the foreseeable future.

**A. Courts Have Waived the Statutory Exhaustion Requirement During the COVID-19 Pandemic.**

Mr. Jaramillo's administrative remedies under 18 U.S.C. § 3582(c)(1)(A) have not yet been exhausted. Traditionally, the procedure in the statute has been interpreted to require that the defendant request the warden of his or her facility to bring a motion for compassionate release on the defendant's behalf, and either wait for a response or for thirty (30) days to lapse, whichever is first, before proceeding. However, the COVID-19 pandemic has created extenuating circumstances and the need for expediency in reviewing defendants' requests for compassionate release. This administrative process has become a barrier to the timely relief it has been put in place to facilitate. The issue of whether administrative remedies must be exhausted before seeking judicial relief, has recently been analyzed in many courts,

including the Eastern District of Michigan, which has held in some instances that administrative remedies do not need to be satisfied before reviewing the case on its merits.

In *United States v. Agomuoh*, Judge Levy looked to the text and congressional intent of the compassionate release statute and determined the language bound the Government, and not the defendant, to the thirty (30) day timeline if the Bureau of Prisons (BOP) wished to take part in the decision. No. 16-20196, 2020 U.S. Dist. LEXIS 86562, at *16 (E.D. Mich. May 18, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)). Also, the short thirty (30) day timeframe, and ability of the defendant to move forward with the request without a definitive response from BOP, supports that the administrative review requirement is not so absolute as to prevent judicial waiver in cases of undue prejudice. *Id.* at *15-16. Judge Levy held, "[t]he court honors congressional intent not by routinely enforcing the 30-day period in the face of a global pandemic, but instead by waiving such a requirement where appropriate and in accordance with Congress's clear attempt to afford quick judicial relief to vulnerable individuals." No. 16-20196, 2020 U.S. Dist. LEXIS 86562, at *16 (E.D. Mich. May 18, 2020). Likewise, Mr. Jaramillo should not be barred from judicial review of his compassionate release request because he has not exhausted his administrative remedies.

### B. Extraordinary and Compelling Circumstances Exist to Grant Mr. Jaramillo Compassionate Release.

### 1. Serious Medical Conditions

Mr. Jaramillo's serious medical conditions constitute extraordinary and compelling reasons. Mr. Jaramillo is a seventy (70) year-old man who suffers from tachycardia, heart palpitations, high cholesterol, type 2 diabetes, rheumatoid arthritis, gout attacks, and thyroid problems including hyperthyroidism and thyroid removal. Mr. Jaramillo's age and health conditions place him within the increased risk group for developing severe illness from COVID-19. Centers for Disease Control and Prevention (CDC) states that the chance of hospitalization, intensive care admission, and death increases with age.[1] Certain underlying conditions such as type 2 diabetes mellitus also puts Mr. Jaramillo, and individuals of any age, at higher risk for severe illness.[2] CDC recommends that people like Mr. Jaramillo with increased risk should limit their interactions with others as much as possible and take precautions such as social distancing and limiting contact with commonly touched surfaces and items. *Id*. After a recent examination, Mr. Jaramillo's physician,

---

[1] *See* Centers for Disease Control and Prevention, Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed Nov. 10, 2020).
[2] *See* Centers for Disease Control and Prevention, People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Nov. 10, 2020).

5

Dr. James Mackenzie, M.D. wrote, "[s]entencing [Mr. Jaramillo] to jail could be a death sentence." *See* Exhibit A. It will be difficult for Mr. Jaramillo to reduce his interaction with other people and his use of shared spaces within USP Lewisburg, which currently houses a total of nine hundred fifty-one (951) male inmates.[3] It is inevitable that Mr. Jaramillo will be, sleeping, eating, bathing, and living in close proximity to other inmates and facility employees, making abidance with the CDC guidelines impracticable.

### 2. Dangerous Conditions Within and Surrounding USP Lewisburg

The Federal Bureau of Prisons (BOP) has reported that currently no inmates or staff at USP Lewisburg in Lewisburg, PA have tested positive for COVID-19; however, the facility has had nearly one hundred (100) cases of COVID-19 with eighty-seven (87) inmates and twelve (12) staff members who have since recovered.[4] Despite the currently low numbers in the facility, the statistics do not guarantee that COVID-19 is not present among the inmate population and staff at USP Lewisburg. COVID-19 can spread through asymptomatic or pre-symptomatic transmission, meaning while a person never develops symptoms or has not yet developed

---

[3] *See* Federal Bureau of Prisons, USP Lewisburg, https://www.bop.gov/locations/institutions/lew/ (last accessed Nov. 10, 2020).
[4] *See* Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed Nov. 10, 2020).

6

symptoms, that person can still infect other people.[5] Without frequent COVID testing of all inmates and employees, it is difficult to determine who is and is not infectious, and as a result COVID-19 remains a serious threat at USP Lewisburg, especially for vulnerable individuals like Mr. Jaramillo.

Vigorous testing is especially important now as the United States is reporting a serious spike in COVID-19 cases as more than one hundred thousand (100,000) new cases are being recorded daily, with experts predicting the pandemic is entering its worst phase.[6] Pennsylvania currently has about three thousand two hundred (3,200) new cases a day, which is 204% higher than last month's daily case average.[7] This number is expected to increase according to Pennsylvania Health Secretary Rachel Levine.[8] While Mr. Jaramillo does not have direct contact with the community surrounding USP Lewisburg, he does risk exposure from facility employees who likely live in neighboring areas that are experiencing drastic increases in COVID-19 cases.

---

[5] *See* World Health Organization, Transmission of SARS-CoV-2: implications for infection prevention precautions, https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions (last accessed Nov. 10, 2020).

[6] Kim Bellware, Lateshia Beachum, Hamza Shaban, Meryl Kornfield, Darren Sands, Jacqueline Dupree and Carolyn Y. Johnson, *U.S. surpasses 10 million coronavirus cases; experts warn country is entering worst phase*, The Washington Post, https://www.washingtonpost.com/nation/2020/11/09/coronavirus-covid-live-updates-us/ (Nov. 9, 2020, 1130 PM).

[7] Rob Tornoe, Justine McDaniel, and Erin McCarthy, *Pennsylvania, New Jersey, and Delaware all seeing similar spike in cases*, The Philadelphia Inquirer, https://www.inquirer.com/health/coronavirus/live/covid-coronavirus-cases-pa-philadelphia-nj-de-updates-testing-hospital-vaccine-news-20201110.html (Nov. 10, 2020, 7:30 AM)

[8] *Id.*

The dangers of transmission (including asymptomatic and pre-symptomatic), the inability to properly socially distance within the facility, and the growing number of positive cases in the surrounding community and throughout the country create a dangerous environment for Mr. Jaramillo as it increases his already heightened risk of severe illness or death from COVID-19. Therefore, extraordinary and compelling reasons warrant modification of his sentence.

### 3. No Risk of Danger to the Community.

Based on the framework provided in 18 U.S.C. § 3142(g), Mr. Jaramillo is not a danger to the community and presents no risk to public safety. Mr. Jaramillo is a seventy (70) year-old father and retired engineer with no criminal history. PSR at 8, 9, 11-12. He was convicted of the non-violent crime of Conspiracy to Commit Health Care Fraud and Wire Fraud. Mr. Jaramillo plans to live alone following incarceration, and that residence has been inspected and deemed fit by Pretrial Services. PSR at 10.

Mr. Jaramillo accepted responsibility for his actions and pleaded guilty to conspiracy. Since he was sentenced on May 3, 2018 until reporting to prison, Mr. Jaramillo lived in the community without incident, and his report date was extended multiple times without objection from the Government.

### 4. Incarceration is Unnecessary to Serve the Purposes of Punishment.

Incarcerating Mr. Jaramillo is unnecessary to serve the purposes of punishment under 18 U.S.C. § 3553(a)(2). The goals of punishment are to reflect on the seriousness of the offense, deter future criminal conduct, protect the public, and provide defendants with necessary training and/or treatment. § 3553(a)(2)(A)-(D). During this global pandemic, these purposes can be adequately achieved through a modified sentence for non-violent, first-time offenders such as Mr. Jaramillo. The detrimental effects of serving a term of incarceration while facing COVID-19 exposure far exceed Mr. Jaramillo's potential danger to the community. The other goals can be achieved outside of prison, and without the risk of serious complications from COVID-19 infection and death.

## IV. CONCLUSION

WHEREFORE Defendant Liberty Jaramillo, by and through his undersigned counsel, respectfully requests that this Honorable Court GRANT his instant Emergency Motion for Compassionate Release.

Respectfully Submitted,
CHAPMAN LAW GROUP

Dated: November 16, 2020

/s/ *Ronald W. Chapman II*
Ronald W. Chapman II (P73179)
*Attorney for Defendant Jaramillo*
1441 West Long Lake Rd., Suite 310
Troy, Michigan 48098
(248) 644-6326
rwchapman@chapmanlawgroup.com

9

## **PROOF OF SERVICE**

I hereby certify that on November 16, 2020, I presented the foregoing document to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by U.S. Postal Service the document to any involved non-participants.

/s/ *Ronald W. Chapman II*
Ronald W. Chapman II (P73179)
*Attorney for Defendant Jaramillo*
rwchapman@chapmanlawgroup.com