# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,                                   Case No.: 16-CR-20593

v.                                              Hon. Gershwin A. Drain

**D-2 LIBERTY JARAMILLO,**

    Defendant.

---

## DEFENDANT LIBERTY JARAMILLO'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE

NOW COMES Defendant Liberty Jaramillo ("Mr. Jaramillo") by and through his undersigned counsel, and respectfully moves this Honorable Court pursuant to 18 U.S.C. § 3582(c)(1)(A) to reduce his imposed term of imprisonment to time served and impose a new sentence of supervised release and/or home confinement. Mr. Jaramillo respectfully requests that he be granted compassionate release for the following reasons:

    1.    Mr. Jaramillo is seventy (70) years old and suffers from type 2 diabetes, tachycardia, heart palpitations, high cholesterol, rheumatoid arthritis, gout attacks, and thyroid problems.

2. Mr. Jaramillo reported to the federal correctional institution USP Lewisburg in Lewisburg, PA on November 13, 2020, to serve his thirty-six (36) month sentence for healthcare fraud.

3. Mr. Jaramillo's report date had been continued multiple times by stipulation to provide the Government with substantial assistance in their ongoing investigation of his former associates. The report date was also continued several times without objection due to the COVID-19 pandemic. The pandemic remains a threat throughout the Unites States, especially for older adults with preexisting conditions such as Mr. Jaramillo.

4. On November 20, 2020, Mr. Jaramillo emailed and mailed a letter to the Warden of USP Lewisburg requesting compassionate release.

5. Mr. Jaramillo has exhausted his administrative remedies. Thirty (30) days have since lapsed since Mr. Jaramillo submitted the request without a response from the BOP.

6. Extraordinary and compelling reasons exist to grant Mr. Jaramillo compassionate release.

7. The purposes of punishment can be adequately achieved through alternatives to incarceration, and without risk of danger to the community.

8. The Government has been contacted prior to filing this motion, and objects to compassionate release.

WHEREFORE, for the reasons stated herein and in the attached Brief in Support, Defendant Liberty Jaramillo, by and through his undersigned counsel, respectfully requests that this Honorable Court GRANT his instant Motion for Compassionate Release.

                                              Respectfully Submitted,
                                              CHAPMAN LAW GROUP

Dated: December 30, 2020            /s/ *Ronald W. Chapman II*
                                              Ronald W. Chapman II (P73179)
                                              Meaghan G. McKeon (P81287)
                                              *Attorney for Defendant Jaramillo*
                                              1441 West Long Lake Rd., Suite 310
                                              Troy, Michigan 48098
                                              (248) 644-6326
                                              rwchapman@chapmanlawgroup.com
                                              mmckeon@chapmanlawgroup.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                            Case No.: 16-CR-20593

v.                                          Hon. Gershwin A. Drain

**D-2 LIBERTY JARAMILLO,**

    Defendant.

---

### BRIEF IN SUPPORT OF DEFENDANT LIBERTY JARAMILLO'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE

Defendant Liberty Jaramillo respectfully submits this Brief in Support of his Emergency Motion for Compassionate Release.

### I. BACKGROUND

On June 15, 2017, Mr. Jaramillo entered a Plea Agreement and pleaded guilty to Conspiracy to Commit Health Care Fraud and Wire Fraud, in violation of 18 U.S.C. § 1349. On May 3, 2018, Mr. Jaramillo was sentenced to thirty-six (36) months in prison. Dkt. No. 142. Mr. Jaramillo reported to prison on November 13, 2020. Dkt. No. 197. This Court previously entered orders to extend Mr. Jaramillo's original report date of June 7, 2018 to:

    a. September 7, 2018 (Dkt. No. 145)

    b. January 7, 2019 (Dkt. No. 153)

  c. April 8, 2019 (Dkt. No. 160)

  d. August 19, 2019 (Dkt. No. 166)

  e. February 3, 2020 (Dkt. No. 171)

  f. March 23, 2020 (Dkt. No. 176)

  g. July 23, 2020 (Dkt. No. 179)

**II. GOVERNING LAW**

Once imposed, a term of imprisonment cannot be modified by the court unless it determines that the defendant's administrative rights have been exhausted and extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. § 3582(c)(1)(A). The defendant or Director of the Bureau of Prisons must move the court to hear a motion of modification upon exhaustion of all administrative rights or after the lapse of thirty (30) days, whichever is first. *Id*.

Upon review of the merits of a motion for compassionate release, the court must consider the following factors: 1) whether extraordinary and compelling reasons warrant a sentence reduction, § 3582(c)(1)(A)(i); 2) whether the defendant is a danger to the community, 18 U.S.C. § 3142(g), U.S.S.G. § 1B1.13; 3) whether the reduction would take into consideration the purposes of punishment, 18 U.S.C. § 3553(a).

### III. ARGUMENT

Mr. Jaramillo reported to USP Lewisburg on November 13, 2020, to serve his thirty-six (36) month sentence for conspiracy to commit health care fraud and wire fraud. Despite being sentenced approximately two-and-a-half (2½) years ago, Mr. Jaramillo had since been living peacefully in the community as his prison term loomed over him. Mr. Jaramillo agreed to extend his report date several times by stipulation to provide the Government substantial assistance in the investigation and pending cases of his former associates. However, with these extensions came the unexpected onset of the COVID-19 pandemic that continues to rage at an alarming pace. In the meantime, Mr. Jaramillo grows older with his chronic conditions only apt to worsen with age and stress. Mr. Jaramillo reported to prison on November 13, before the severity of the latest escalation in COVID-19 cases was realized, with the intention of starting his sentence and moving forward with his life. Mr. Jaramillo now seeks expeditious review of his Motion for Compassionate Release as his vulnerable health condition, which is the result of age, chronic illness, and the COVID-19 pandemic, remains a significant threat to his wellbeing for the foreseeable future.

**A. Mr. Jaramillo Has Exhausted His Administrative Remedies.**

Mr. Jaramillo's administrative remedies under 18 U.S.C. § 3582(c)(1)(A) have been exhausted. The procedure in the statute requires that the defendant request

the warden of his or her facility to bring a motion for compassionate release on the defendant's behalf, and if the BOP does not move for compassionate release then the defendant may move the court for compassionate release for him or herself, but "he must 'fully exhaust[] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison." *United States v. Alam*, 960 F.3d 831, 833-834 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). Mr. Jaramillo's request for compassionate release was submitted via email and mail to Warden Spaulding of USP Lewisburg on November 20, 2020. Exhibit B. Thirty (30) days have since lapsed with no response from the BOP.

### B. Extraordinary and Compelling Circumstances Exist to Grant Mr. Jaramillo Compassionate Release.

#### 1. Serious Medical Conditions

Mr. Jaramillo's serious medical conditions constitute extraordinary and compelling reasons. Mr. Jaramillo is a seventy (70) year-old man who suffers from tachycardia, heart palpitations, high cholesterol, type 2 diabetes, rheumatoid arthritis, gout attacks, and thyroid problems including hyperthyroidism and thyroid removal. Mr. Jaramillo's age and health conditions place him within the increased risk group for developing severe illness from COVID-19. Centers for Disease Control and Prevention (CDC) states that the chance of hospitalization, intensive

care admission, and death increases with age.[1] Certain underlying conditions such as type 2 diabetes mellitus also puts Mr. Jaramillo, and individuals of any age, at higher risk for severe illness.[2] CDC recommends that people like Mr. Jaramillo with increased risk should limit their interactions with others as much as possible and take precautions such as social distancing and limiting contact with commonly touched surfaces and items. *Id*. After a recent examination, Mr. Jaramillo's physician, Dr. James Mackenzie, M.D. wrote, "[s]entencing [Mr. Jaramillo] to jail could be a death sentence." *See* Exhibit A. It will be difficult for Mr. Jaramillo to reduce his interaction with other people and his use of shared spaces within USP Lewisburg, which currently houses a total of five-hundred-fifty-six (556) male inmates.[3] It is inevitable that Mr. Jaramillo will be, sleeping, eating, bathing, and living in close proximity to other inmates and facility employees, making abidance with the CDC guidelines impracticable.

---

[1] *See* Centers for Disease Control and Prevention, Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed Nov. 10, 2020).
[2] *See* Centers for Disease Control and Prevention, People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Nov. 10, 2020).
[3] *See* Federal Bureau of Prisons, USP Lewisburg, https://www.bop.gov/locations/institutions/lew/ (last accessed Dec. 21, 2020).

## 2. Dangerous Conditions Within and Surrounding USP Lewisburg

The Federal Bureau of Prisons (BOP) has reported that currently sixty-one (61) inmates at USP Lewisburg, in Lewisburg, PA, have tested positive for COVID-19. Despite the reported statistics, there is no guarantee that this number is completely accurate or that all COVID-19 infections among the inmate population and staff in the facility are known and contained at USP Lewisburg. COVID-19 can spread through asymptomatic or pre-symptomatic transmission, meaning while a person never develops symptoms or has not yet developed symptoms, that person can still infect other people.[4] Without frequent COVID testing of all inmates and employees, it is difficult to determine who is and is not infectious, and as a result COVID-19 remains a serious threat at USP Lewisburg, especially for vulnerable individuals like Mr. Jaramillo.

Vigorous testing and vaccination is especially important now as the United States is reporting a serious spike in COVID-19 cases with two-hundred-fifty-thousand (250,000) positive tests, a new daily record, reported on Friday, December 19, 2020.[5] On the same day, one-hundred-twenty-eight-thousand (128,000) people

---

[4] *See* World Health Organization, Transmission of SARS-CoV-2: implications for infection prevention precautions, https://www.who.int/news-room/commentaries/detail/transmission-of-sars-cov-2-implications-for-infection-prevention-precautions (last accessed Nov. 10, 2020).

[5] Bryan Pietsch, *As vaccines arrive, the virus continues to ravage the U.S. and Europe*, https://www.nytimes.com/live/2020/12/19/world/covid-19-coronavirus#as-vaccines-arrive-the-virus-continues-to-ravage-the-us-and-europe,

6

received their first dose of the COVID-19 vaccine, approximately half the day's case total.[6] While Mr. Jaramillo does not have direct contact with the community surrounding USP Lewisburg, he does risk exposure from facility employees who likely live in neighboring areas that are experiencing drastic increases in COVID-19 cases. The recent FDA approval of the COVID-19 vaccine offers hope for the future. However, the first signs of herd immunity are not expected until at least fifty percent (50%) of the population is vaccinated, which is not predicted to occur until at least Spring 2021,[7] in the meantime, leaving the most vulnerable people like Mr. Jaramillo at continued risk for serious infection. State and federal prisons have been described as "incubators for disease" with one (1) in five (5) inmates testing positive for COVID-19; however, it remains unclear when prisoners will be given the vaccine.[8]

---

The New York Times, https://www.nytimes.com/live/2020/12/19/world/covid-19-coronavirus#as-vaccines-arrive-the-virus-continues-to-ravage-the-us-and-europe (Dec. 22, 2020).
[6] *Id*.
[7] Brakkton Booker, Fauci Predicts U.S. Could See Signs of Herd Immunity By Late March or Early April 2021, https://www.npr.org/sections/coronavirus-live-updates/2020/12/15/946714505/fauci-predicts-u-s-could-see-signs-of-herd-immunity-by-late-march-or-early-april (Dec. 15, 2020, 12:11 PM).
[8] *See* Roni Caryn Rabin, *Prisons Are COVID-19 Hotbeds. When Should Inmates Get the Vaccine?,* The New York Times, https://www.nytimes.com/2020/11/30/health/coronavirus-vaccine-prisons.html (Dec. 2, 2020); Beth Schwartzapfel, Katie Park, & Andrew Demillo, *1 in 5 Prisoners in the US has had COVID-19, 1,700 have died*, ABC News, https://abcnews.go.com/Health/wireStory/prisoners-us-covid-19-1700-died-74797059 (Dec. 18, 2020, 7:51 PM); Clare Hymes, *Federal prisons to prioritize staffers for COVID-19 vaccine and give to inmates when more doses are available*,

The federal government's Operation Warp Speed has identified correctional officers and health care workers as among the first groups to receive the vaccine, but the BOP has not released a clear timeline for distribution among its inmates nor any information on which of its one-hundred-twenty-two (122) facilities will receive doses of the vaccine first.[9]

The dangers of transmission (including asymptomatic and pre-symptomatic), the inability to properly socially distance within the facility, and the high number of positive cases in the surrounding community and throughout the country create a dangerous environment for Mr. Jaramillo as it increases his already heightened risk of severe illness or death from COVID-19. Therefore, extraordinary and compelling reasons warrant modification of his sentence.

### 3. No Risk of Danger to the Community.

Based on the framework provided in 18 U.S.C. § 3142(g), Mr. Jaramillo is not a danger to the community and presents no risk to public safety. Mr. Jaramillo is a seventy (70) year-old father and retired engineer with no criminal history. PSR at 8-9, 11-12. He was convicted of the non-violent crime of Conspiracy to Commit

---

CBS News, https://www.cbsnews.com/news/covid-vaccine-federal-prisons-staffers/ (Dec. 16, 2020, 8:10 PM).

[9] Clare Hymes, *Federal prisons to prioritize staffers for COVID-19 vaccine and give to inmates when more doses are available*, CBS News, https://www.cbsnews.com/news/covid-vaccine-federal-prisons-staffers/ (Dec. 16, 2020, 8:10 PM).

Health Care Fraud and Wire Fraud. Mr. Jaramillo plans to live alone following incarceration, and that residence has been inspected and deemed fit by Pretrial Services. PSR at 10.

Mr. Jaramillo accepted responsibility for his actions and pleaded guilty to conspiracy. Since he was sentenced on May 3, 2018, until reporting to prison, Mr. Jaramillo lived in the community without incident, and his report date was extended multiple times without objection from the Government.

**4. Incarceration Is Unnecessary to Serve the Purposes of Punishment.**

Incarcerating Mr. Jaramillo is unnecessary to serve the purposes of punishment under 18 U.S.C. § 3553(a)(2). The goals of punishment are to reflect on the seriousness of the offense, deter future criminal conduct, protect the public, and provide defendants with necessary training and/or treatment. § 3553(a)(2)(A)-(D). During this global pandemic, these purposes can be adequately achieved through a modified sentence for non-violent, first-time offenders such as Mr. Jaramillo. The detrimental effects of serving a term of incarceration while facing COVID-19 exposure far exceed Mr. Jaramillo's potential danger to the community. The other goals can be achieved outside of prison, and without the risk of serious complications from COVID-19 infection and death.

## IV. CONCLUSION

WHEREFORE Defendant Liberty Jaramillo, by and through his undersigned counsel, respectfully requests that this Honorable Court GRANT his Motion for Compassionate Release, reduce his sentence to time served, and impose a new term of supervised release and/or home confinement.

                                                          Respectfully Submitted,
                                                          CHAPMAN LAW GROUP

Dated:  December 30, 2020              /s/ *Ronald W. Chapman II*
                                                          Ronald W. Chapman II (P73179)
                                                          Meaghan G. McKeon (P81287)
                                                          *Attorney for Defendant Jaramillo*
                                                          1441 West Long Lake Rd., Suite 310
                                                          Troy, Michigan 48098
                                                          (248) 644-6326
                                                          rwchapman@chapmanlawgroup.com
                                                          mmckeon@chapmanlawgroup.com

## **PROOF OF SERVICE**

I hereby certify that on December 30, 2020, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to any involved non-participants.

>/s/ *Ronald W. Chapman II*
>Ronald W. Chapman II (P73179)
>*Attorney for Defendant Jaramillo*
>rwchapman@chapmanlawgroup.com